IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:06-CV-458-D

MARY ELIZABETH DEESE, )
        Plaintiff/Claimant, )
)
) **MEMORANDUM AND**
) **RECOMMENDATION**
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
)
        Defendant. )

This matter is before the court on the parties' cross motions for judgment on the pleadings. Claimant Mary Elizabeth Deese seeks judicial review of the Commissioner's denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). After a thorough review of the record and consideration of the briefs submitted by counsel, it is recommended that Claimant's Motion for Judgment on the Pleadings [DE-13] be denied and Defendant's Motion for Judgment on the Pleadings [DE-18] be granted.

## STATEMENT OF THE CASE

On June 9, 2003, Claimant protectively filed an application for SSI, and on June 24, 2003, Claimant filed an application for DIB. She claimed that she became disabled as of September 1, 2002 due to deteriorating disks, osteoarthritis, and a tumor on her ovary. Claimant's application was denied initially and upon reconsideration. Claimant then requested a hearing before an Administrative Law Judge ("ALJ"), which took place on October 19, 2005. After the hearing, on June 6, 2006, the ALJ issued a decision denying plaintiff's claims. The Appeals Council denied Claimant's request for review on October

6, 2006, rendering the ALJ's decision a "final decision" for purposes of judicial review. See Walls v. Barnhart, 296 F.3d 287, 289 (4th Cir. 2002) (noting that when the Appeals Council denies a request for review, the underlying decision by the ALJ becomes the agency's final decision for purposes of appeal). Claimant timely commenced the instant action pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

I.  **The Standard of Review and Social Security Framework**

The scope of judicial review of a final decision regarding disability benefits under the Social Security Act, 42 U.S.C. § 405(g), is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. See Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987); see also 42 U.S.C. § 405(g) (2006). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

This Court must not weigh the evidence, as it lacks the authority to substitute its judgment for that of the Commissioner. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, in determining whether substantial evidence supports the Commissioner's decision, the Court's review is limited to whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his or her findings and

rationale in crediting the evidence. See Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439-40 (4th Cir. 1997).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed in a disability case. See 20 C.F.R. §§ 404.1520 and 416.920. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. If the claimant is not engaged in substantial gainful activity, then at step two the ALJ determines whether the claimant has a severe impairment or combination of impairments which significantly limit him or her from performing basic work activities. If no severe impairment is found, the claim is denied. If the claimant has a severe impairment, at step three the ALJ determines whether the claimant's impairment meets or equals the requirements of one of the Listings of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. If the impairment meets or equals a Listing, the person is disabled per se.

If the impairment does not meet or equal a Listing, at step four the claimant's residual functional capacity (RFC) is assessed to determine if the claimant can perform his or her past work despite the impairment; if so, the claim is denied. However, if the claimant cannot perform his or her past relevant work, at step five the burden shifts to the Commissioner to show that the claimant, based on his or her age, education, work experience and RFC, can perform other substantial gainful work. The Commissioner often attempts to carry its burden through the testimony of a vocational expert (VE), who testifies as to jobs available in the economy based on the characteristics of the claimant.

In this case, Claimant alleges the following errors: (1) improper rejection of a treating physician's opinion; (2) improper credibility assessment; and (3) improper hypothetical presented to the VE.

3

Case 5:06-cv-00458-D   Document 24   Filed 01/16/08   Page 3 of 14

## II. The ALJ's Findings

In making the decision in this case, the ALJ proceeded through the five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920, and found that Claimant had not engaged in substantial gainful activity since September 1, 2002, the alleged onset date. (R. 16). Then, the ALJ proceeded to step two to determine whether Claimant had a "severe" impairment or combination of impairments which significantly limited her from performing basic work activities. See 20 C.F.R. §§ 404.1520(b) and 416.920(b). The ALJ found that Claimant suffered from the severe impairments of degenerative disc disease and osteoarthritis. (R. 16). However, at step three the ALJ determined that Claimant's impairments were not severe enough to meet or medically equal one of the impairments listed in 20 C.F.R. § 404, Subpart P, App. 1. (R. 17). Next, the ALJ determined Claimant's RFC by considering all of her subjective complaints and reviewing her medical records, and concluded that she had the ability to perform a wide range of sedentary to light work activity. (Id.). At step four, the ALJ found that Claimant had past relevant work experience as a waitress, sewing machine operator, bartender, and restaurant/coffee shop manager. (R. 20). At step five, the ALJ determined that Claimant could return to her past relevant work as a restaurant/coffee shop manager. (R. 21). As a result, the ALJ found that Claimant was not under a "disability," as defined in the Social Security Act, from September 1, 2002 through the date of her decision. (Id.).

## III. The Administrative Hearing

### A. Claimant's Testimony at the Administrative Hearing

Claimant testified at her administrative hearing. (R. 35-58). She was 53 years old on the date of the hearing. (R. 35). Claimant lives in a mobile home with a friend, but she is unable to pay any rent because she has no income. (R. 35-36). Claimant is recently divorced and has no children under age 18 living in her home. (R. 36). She completed the ninth grade and quit school because she got married. (Id.). At age 16, Claimant gave birth to triplets and was unable to go back to school. (Id.). Claimant has a driver's license, although she rarely drives. (R. 36-37). She is right-handed. (R. 37).

In the past fifteen years, Claimant has worked as a waitress, seamstress, bartender, and weaver in a cotton mill. (Id.). From 1986 until 1990 Claimant worked at a restaurant as a manager, waitress, and bartender. (R. 38). She left that job because the restaurant went out of business. Claimant then worked for several employers as a seamstress. (R. 38-39). Following her seamstress jobs, Claimant worked as a waitress at several restaurants. (R. 39-40). Claimant testified that she is not currently working. (R. 40). She applied for Medicaid, but was denied. (R. 41). Between 2001 and 2002 Claimant did yard work until she injured her back moving a heavy piece of wood. (Id.).

Claimant is currently under a doctor's care for her back. (R. 42). She goes to the Johnston County health department or the emergency room for medical treatment. (Id.). Claimant's back pain began in her lower back, but now extends down her legs. (R. 43). Sometimes when she is walking, Claimant's right leg will give out on her and she almost falls. (Id.). Claimant also has pain across her shoulders, in her neck, arms, and her hands

5

often tingle or become numb. (R. 44). The pain seems to be getting more severe and feels like a burning and throbbing sensation. (Id.). Because of her pain, Claimant does not lift heavy objects and often lays down with her feet elevated. (Id.). She is also unable to sit for long periods of time. (R. 44-45). Claimant stated that she has difficulty getting out of bed in the mornings due to her pain and stiffness. (R. 45). Daily activities take her longer because she must stop and rest often. (Id.). Claimant is only able to stand at the stove for about three or four minutes before she must sit down. (Id.). Claimant is able to do the laundry, cook, and wash the dishes. (R. 46). However, it takes Claimant about thirty minutes to wash her own dishes and clean up the kitchen after cooking because she must support herself with one arm by leaning on the counter. (R. 46-47). Claimant stated that she is able to walk about a quarter of a mile comfortably, which she believes is about three city blocks. (R. 47). Claimant indicated that it would take her 12 to 15 minutes to walk that distance. (Id.). Claimant is only able to sit comfortably for about five minutes. (R. 47-48). Claimant gets the most relief from her pain when she lays down on her side with a pillow between her legs. (R. 48).

Claimant drove herself to the hearing in her friend's car, although she first attempted to get rides from several individuals. (R. 48-49). Claimant testified that she has severe pain everyday. (R. 49). Claimant has been prescribed medication by her doctors, which she takes off and on. (R. 50). Frequently, she is unable to fill her prescriptions due to her lack of income; therefore, she often just takes Ibuprofen. (Id.). However, the Health Department usually gives her some samples of medication and on occasion they will fill her prescription blood pressure medication for free. (Id.). If Claimant goes to the emergency room, they will give her shots of medicine. (Id.). Claimant's doctor at UNC Chapel Hill

6

wanted her to attend physical therapy sessions at UNC, but Claimant had to decline because she does not have the money to pay for the sessions nor does she have transportation. (R. 51). Additionally, Claimant's doctor did not write her any prescriptions because Claimant told him that she could not pay for them. (Id.).

When Claimant was doing yard work, she usually worked only about ten hours each week moving logs and tree branches after a tree cutter trimmed trees. (R. 52). Claimant stated that she smokes 3/4 of a pack of cigarettes everyday, although some days she smokes a pack or more. (R. 52-53). Claimant does not usually drink, and the last time she had alcohol was six months ago when she drank one beer. (R. 53). She is currently using two inhalers for her COPD, which affects her breathing. (Id.). Claimant's friends or children purchase her cigarettes for her. (R. 54). Claimant has six children, but only keeps in touch with five of them. (Id.). Four of Claimant's children live close to her. (Id.). She has 13 grandchildren, and she last saw six of them two weeks prior to the hearing at a birthday party. (Id.). Claimant usually sees her children or grandchildren about two or three times each week, although sometimes she does not see them for several weeks at a time. (R. 55). Claimant did not purchase her inhalers; they were free samples. (Id.).

In 2002 Claimant applied for a job at Hardees, but they were not hiring. (R. 56). Claimant stated that she is not sure whether her doctors at the health department are aware that her doctor in Chapel Hill wanted her to attend physical therapy. (R. 58). Claimant has not tried to get physical therapy in her hometown. (Id.).

B.  **Interrogatories Posed to Vocational Expert**

Stephen D. Carpenter, a vocational expert, provided answers to a number of interrogatories posed by the ALJ. (R. 127-31). The VE indicated that he had reviewed

vocational records from Claimant's file that had been provided to him. (R. 127). He described Claimant's past work as a waitress as light, semi-skilled work with a Specific Vocational Preparation (SVP) of 3 and a Dictionary of Occupational Title (DOT) code of 311.477-030. (R. 128). He described Claimant's past work as an automatic sewing machine operator as light, unskilled work with an SVP of 2 and a DOT code of 786.685-030. (Id.). He described Claimant's past work as a bartender as light, semi-skilled work with an SVP of 3 and a DOT code of 312.474-010. (Id.). Finally, the VE described Claimant's past work as a restaurant or coffee shop manager as light, skilled work with an SVP of 7 and DOT code of 187.167-106. (Id.). The VE then indicated that in Claimant's work as a bartender, she acquired the following transferable skills: mixing drinks, data recording, control of materials and financial resources, customer service, ordering, and related food service skills. (Id.) In Claimant's work as a manager she acquired the following transferable skills: customer service, food service, marketing and sales, data recording, control of personnel, financial and material resources, business operating, and general clerical and administrative skills. (Id.). The ALJ then posed the following hypothetical:

> Assume the existence of a hypothetical individual of the age of 53 with a 9th grade education, the ability to read, write, to perform basic math and a work history consistent with that set forth by the claimant. Further assume that due to the combined effects of limitations and pain from lumbar and cervical disc disease, the individual is capable of lifting and/or carrying weight up to 10-15# on a [sic] occasional basis and less than 10# on a frequent basis. Further, the individual is capable of being on her feet for 6 hours out of an 8 hour day but because of back pain is probably not capable of being on her feet for more than four hours at a time. Similarly, the individual can sit up to four hours at a time without standing, but probably not much more. She should avoid other than occasional bending, squatting and kneeling activities. Based on the above, are there jobs in the regional and national economy available to the hypothetical individual?

8

(R. 129). The VE responded in the affirmative. (Id.). According to the VE, such an individual could perform the light, unskilled jobs of a cashier II, SVP 2 and DOT code of 211.462-010; mail clerk, SVP 2 and DOT code of 209.687-026; and order caller, SVP 2 and DOT code of 209.667-014. (R. 130). Additionally, using her transferable skills, the individual could perform her past relevant work as a restaurant/coffee shop manager or other food service management with DOT code of 187.167-106; administrative clerk, SVP 4 and DOT code of 219.362-010; and clerk, SVP 3 and DOT code of 209.562-010. (Id.). All of the jobs mentioned by the VE existed in significant numbers in both the local and national economies. (Id.).

IV. **Claimant's Arguments**

A. **Treating Physician's Opinion**

Under the Commissioner's regulations, controlling weight is given to the opinion of a treating source on the issues of the nature and severity of an impairment if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1995). Additionally, the ALJ is not bound by a treating physician's opinion regarding whether a claimant is disabled, as that opinion is one reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).

9

Claimant's treating physician, Dr. Pearson, submitted two letters, dated November 29, 2005 and February 21, 2006 on Claimant's behalf discussing the extent of Claimant's medical impairments. (R. 500, 501). The first letter explains the nature and severity of Claimant's impairments (R. 500), while the second letter merely expresses Dr. Pearson's opinion that Claimant should not work more than four hours per day. (R. 501). Claimant contends that the ALJ's rejection of this opinion regarding Claimant's ability to work was in error. The court disagrees.

The ALJ was under no duty to accord any heightened value to Dr. Pearson's opinion regarding Claimant's ability to work. 20 C.F.R. §§ 404.1527(e)(3), 416.927(e)(3). Instead she was required to merely evaluate the opinion, along with all of the other evidence in the record, to determine its supportability. S.S.R. 96-5p. Here the ALJ did just that, by noting other citations in the record where Claimant had full muscle strength and range of motion in her upper and lower extremities, no spinal deformity, normal gait, could walk on her heels and toes, squat and rise, had no motor or sensory deficit, normal reflexes, negative straight leg raising, and could ambulate effectively. (R. 18). Additionally, several times in 2004 Claimant saw an orthopaedic specialist, Dr. Wang, at the University of North Carolina who recommended only medication and physical therapy for Claimant's back pain. (R. 18-19). The ALJ appropriately relied on Dr. Wang's assessment in making his RFC determination. See 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5) (ALJ may give more weight to a specialist's opinion); Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (same).

The ALJ also considered the opinions of two consultative examiners who found that Claimant had the ability to perform medium work, but did not give their opinions great

10

Case 5:06-cv-00458-D   Document 24   Filed 01/16/08   Page 10 of 14

weight, specifically because she accepted Dr. Pearson's medical opinions that Claimant should not sit or stand for more than four hours at a time and should not engage in frequent bending, squatting, or kneeling, (see R. 20, 500). Accordingly, the ALJ appropriately credited Dr. Pearson's opinions in making at her RFC determination.

## B. Credibility Analysis

Claimant argues that substantial evidence does not support the ALJ's findings that her allegations of pain and functional restrictions are not fully credible. The court disagrees.

In assessing a claimant's credibility, the ALJ must follow a two step process. First the ALJ must determine whether the claimant's medically determinable impairments could reasonably cause the alleged symptoms. Craig v. Chater, 76 F.3d 585, 594-95 (4th Cir. 1996). Next, the ALJ must evaluate the claimant's statements regarding those symptoms. Id. at 595. The Social Security rulings require that an ALJ's decision "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." S.S.R. 96-7p. When an ALJ fails to specify the reasons for an adverse credibility determination, remand is appropriate. See Ivey v. Barnhart, 393 F.Supp.2d 387, 390 (E.D.N.C. 2005) (concluding that remand was appropriate because the ALJ failed to adequately explain the basis of his credibility determination).

Here, the ALJ found that "claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's

statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." (R. 19). The ALJ provided specific reasons for her adverse credibility findings. The ALJ summarized Claimant's medical records, which indicated that Claimant has only mild limitations resulting from her impairments and her doctors had treated her only with medication. (R. 19-20). Further, although Claimant indicated to Dr. Wang that she was unable to afford or transport herself to physical therapy in Chapel Hill, she had not explored the possibility of having physical therapy in her hometown. (R. 20).

Claimant is correct in her assertion that she may rely on only subjective evidence of pain to support the second step of the credibility assessment. However, the ALJ need not ignore other objective evidence that contradicts Claimant's subjective complaints. Hines v. Barnhart, 453 F.3d 559, 565 n. 3 (4th Cir. 2006) (citing Craig, 76 F.3d at 595).

The ALJ thoroughly explained her credibility analysis. The fact that Claimant can point to other evidence in the record that supports her claimed impairments and the alleged severity of her pain does not diminish the ALJ's analysis. When conflicting evidence is presented, it is up to the ALJ to resolve those inconsistencies. Hays, 907 F.2d at 1456. It is not the responsibility of this court to determine the weight of the evidence. Id. Here, the ALJ pointed to evidence in the record to support her conclusion that Claimant was not totally credible. Therefore, she satisfied her duty under the applicable regulations and law and did not err in finding Claimant not fully credible.

### C. Hypothetical Posed to VE

Claimant argues that the ALJ failed to adequately account for her physical impairments in the hypothetical posed to the VE. The court disagrees.

12

Courts have repeatedly held that questions to a VE must precisely set out the claimant's individual physical and mental impairments. Walker v. Bowen, 876 F.2d 1097, 1100 (4th Cir. 1989). However, the ALJ need only include in his questioning those impairments which the ALJ has found to be credible. Ehrhart v. Secretary of Health and Human Services, 969 F.2d 534, 540 (7th Cir. 1992). If the ALJ does not believe that the plaintiff suffers from one or more claimed impairments–and if substantial evidence supports that conclusion–then the ALJ is not required to include those impairments in her questioning of the VE. See Johnson, 434 F.3d at 659.

Claimant argues that the hypothetical was flawed because it did not convey to the VE her inability to work a full eight hour day. However, as discussed, the ALJ did not agree with Dr. Pearson's opinion in that regard. Accordingly, she was not required to include that limitation in a hypothetical posed to the VE. See id. The court has already determined that the ALJ's RFC determination is supported by substantial evidence; therefore, the hypothetical, which was based on that RFC, was proper.

## CONCLUSION

Accordingly, it is **RECOMMENDED** that Claimant's motion for judgment on the pleadings be **DENIED**, and defendant's motion for judgment on the pleadings be **GRANTED**. The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum

and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This 16th day of January, 2008.

DAVID W. DANIEL
United States Magistrate Judge